UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLASTWOOD SRL, et al.,

        Plaintiffs,

v.

ROSE ART INDUSTRIES, INC.,

        Defendant.

CASE NO. C07-0458JLR

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court is Defendant Rose Art Industries, Inc.'s ("Rose Art") motion for summary judgment (Dkt. # 38). The court has reviewed the papers submitted in support and in opposition to the motion, including the parties' surreplies, as well as heard the arguments of counsel, and for the reasons stated below, the court GRANTS Rose Art's motion. The court dismisses Plaintiff PlastWood SRL and its wholly-owned subsidiary, PlastWood Corporation's (collectively "PlastWood") complaint against Rose Art.

ORDER GRANTING MOTION– 1

## II. BACKGROUND

This is a false advertising case between two manufacturers of children's construction toys.[1] PlastWood and Rose Art compete in the sale of magnetic construction toy sets. Both PlastWood's and Rose Art's products are comprised of small plastic building blocks that are held together by magnetic force. The Rose Art product at issue in this case is its Magnetix line of construction sets that competes with PlastWood's SuperMag construction sets. PlastWood originally alleged false advertising and unjust enrichment claims against Defendants MEGA Brands and its wholly-owned subsidiary, Rose Art. (Compl. (Dkt. # 1) ¶¶ 44-56.) On October 23, 2007, on Defendants' motion to dismiss, the court dismissed MEGA Brands from the lawsuit for lack of personal jurisdiction and dismissed all claims against Rose Art for unjust enrichment and false advertising, except one claim for false advertising based on a theory of collapsing structures (Dkt. # 30). Rose Art now moves for summary judgment on PlastWood's remaining claim for false advertising under the Lanham Act, 15 U.S.C. § 1125.

According to PlastWood, Rose Art's advertising and product packaging state that a wide variety of structures ("500 designs") can be built by assembling Magnetix blocks in certain described manners. PlastWood contends that many of those structures cannot be built and collapse under their own weight. During discovery, PlastWood was only able to identify three structures that could not be built as advertised by Rose Art: the airplane, the building,[2] and the sphere. (Declaration of Alycia Regan Benenati ("Benenati Decl.")) (Dkt. # 41), Ex. C.) Rose Art moves for summary judgment based on the fact that its

---

[1] The court incorporates herein the statement of the background of this dispute from its October 22, 2007 Order (Dkt. # 30).

[2] The parties have also referred to the building as "the tower" and "the skyscraper." At oral argument on this motion, PlastWood confirmed that these terms refer to the same structure identified on Rose Art's construction set packaging.

ORDER GRANTING MOTION– 2

expert, Jean-Francois Gagnon, a self-proclaimed independent contractor and "builder of construction toys," was able to construct all three structures using only the parts included in the Magnetix toy sets and without using any glue or other adhesive. (Reply Declaration of Jean-Francois Gagnon ("Gagnon Reply Decl.") ¶¶ 4-5 (Mr. Gagnon videotaped himself constructing the building, airplane, and sphere on June 16, 2008. He again videotaped himself constructing the building and airplane on September 10, 2008 to address PlastWood's criticisms and suspicions when the tape of the first build contained some gaps in time.).)

Based on Mr. Gagnon's expert report, Rose Art moved for summary judgment on the grounds that:

(1) each of the structures identified by PlastWood as not able to be built could be built and thus the advertisement is "literally true"; and

(2) PlastWood failed to disclose any consumer survey expert or damage expert to show that a substantial segment of the population was deceived by the allegedly false advertisement or that PlastWood suffered a decline in sales as a result of Rose Art's false advertisement and thus PlastWood cannot show false advertisement using a "misleading advertisement" theory.

(Mot. at 1-2.) PlastWood responds that Rose Art's motion should be denied because (1) it is "patently premature" given that the parties have not completed discovery; (2) PlastWood need not show that consumers were deceived because it is relying on a "literally false" theory; and (3) whether PlastWood can establish a false statement of fact is an issue for trial.

As explained below, the court does not find that PlastWood has demonstrated a genuine issue of material fact for trial on any of these bases. Nor does the court find that additional discovery is warranted. PlastWood's complaints regarding the state of discovery are based on its own actions and inactions. That is, its agreement to stay discovery before any depositions could take place, including the expert deposition of Mr. Gagnon, coupled with its failure to avail itself of the safeguards found in Rule 56(f) of the

ORDER GRANTING MOTION– 3

Federal Rules of Civil Procedure convinces the court that Rose Art's motion is properly and timely before the court.

### III. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

**A.  Timing of Motion**

On July 31, 2008, Rose Art moved for summary judgment on PlastWood's remaining claim for false advertising. At the same time, Rose Art moved to stay discovery (Mot. (Dkt. # 42) at 1.). Instead of opposing Rose Art's motion to stay discovery, PlastWood filed a stipulation consenting to a stay pending the court's resolution of Rose Art's motion for summary judgment. (Stip. (Dkt. # 44) at 1 (conceding that a stay would "conserve the resources of the parties and . . . promote judicial economy").) The court therefore granted the unopposed motion to stay discovery and also gave PlastWood additional time to respond to Rose Art's motion. (*Id.*)

Without moving for a Rule 56(f) continuance of the motion for summary judgment, PlastWood responded to the motion arguing that it is premature and that it cannot adequately oppose the motion because it has not been able to conduct any

ORDER GRANTING MOTION– 4

depositions or complete discovery on the issue of damages. (Resp. (Dkt. # 46) at 7-8 (stating that Rose Art's motion for summary judgment is "patently premature").)[3]

Federal Rule of Civil Procedure 56(f) provides that if "a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." PlastWood not only failed to justify a request for additional discovery by affidavit or otherwise, it failed to even move for a continuance under Rule 56(f). Instead, PlastWood ignores Rule 56(f) and cites *SEC v. Clark*, 699 F.Supp. 839, 842 (W.D. Wash. 1988), for the proposition that a party opposing a motion for summary judgment on the grounds that it is premature must demonstrate how postponing a "ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." PlastWood then baldly states it "acknowledges and clearly meets that requirement," without offering the court any analysis or affidavit to support this statement. (Resp. at 8.) PlastWood's failure to move for a Rule 56(f) continuance is both puzzling and fatal to its claim that Rose Art's motion is premature. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443

---

[3]PlastWood also contends that Rose Art's motion for summary judgment is simply an "end run around" its obligation to move to compel PlastWood to respond to interrogatories regarding its damages. Essentially, PlastWood argues that Rose Art's motion for summary judgment should be denied because Rose Art did not make PlastWood respond to discovery requests regarding lost profits. PlastWood took the position during discovery that it did not need to provide evidence of its alleged lost profits until Rose Art produced its sales history data for its Magnetix construction toy sets. (Resp. at 1.) Instead of moving to compel Rose Art's sales history data in order to prove damages, PlastWood agreed to stay discovery pending the resolution of Rose Art's motion for summary judgment. As Plaintiffs, and the parties holding the ultimate burden of production in this case, PlastWood cannot idly stand by and refuse to prove its damages without moving to compel Rose Art's sales history data, or moving to continue the motion for summary judgment pending a completion of discovery. *See Frederick S. Wyle, P.C. v. Texaco, Inc.*, 764 F.2d 604, 612 (9th Cir. 1985) (cautioning that a plaintiff should not complain if it fails to pursue discovery diligently before summary judgment).

ORDER GRANTING MOTION– 5

(9th Cir. 1986). In *Brae*, the Ninth Circuit held that references in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f) and that failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment. *Id.*

Given that PlastWood consented to Rose Art's request to stay discovery, failed to move to compel answers regarding Rose Art's historical sales data, and failed to utilize the mechanisms for continuing a motion for summary judgment, the court does not find that Rose Art's motion is premature or that PlastWood is entitled to further discovery. The court now turns to the substance of Rose Art's motion.

**B.      Actual Deception**

The elements of a Lanham Act § 43(a)[4] false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was

---

[4]Lanham Act § 43(a), codified at 15 U.S.C. § 1125(a), provides in pertinent part: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which - . . .(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

ORDER GRANTING MOTION– 6

literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993).

PlastWood has not conducted any studies to determine whether any consumers were actually deceived by Rose Art's allegedly false advertising. At oral argument, PlastWood confirmed that it is not pursuing a false advertisement claim based on misleading advertisement but that it had limited its theory for liability to a claim of literal falsity. PlastWood therefore correctly contends that if the statement at issue – i.e., whether the structures can be built as advertised – is literally false, the court must assume that it actually mislead and confused consumers, without requiring any evidence of such deception from PlastWood. (Resp. at 9 (citing *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1383 (2d Cir. 2002); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002).) While PlastWood's contention is correct, as discussed below, it does not have any evidence that Rose Art's advertisement is literally false and cannot therefore rely on these cases in arguing that it need not show actual deception.

PlastWood seems to also contend that the statements are literally false because the structures, albeit able to be built, can only be built by experts and not by the toys' intended audience: children. The Magnetix toys are labeled as entertainment for ages 3 to 100. Thus, the court does not find that because a 3 year old could not build some of the structures the labeling is literally false. PlastWood fails to cite any authority for the proposition that advertising structures that are hard to build is tantamount to a false advertising claim, especially considering the box says it is intended for ages 3 to 100.[5]

---

[5] At oral argument, PlastWood requested that the court take judicial notice of the fact that a number of children's toys are labeled with catchy phrases such as "for children 8 to 100 years," but that they are only really intended for children. The court declines to take judicial notice of other toys' labels and their intended meanings.

ORDER GRANTING MOTION– 7

## C. Literal Falsity as a Question of Fact

While PlastWood is correct that the question of whether a statement is literally false is a question of fact, in this case, the court finds that PlastWood fails to establish any genuine issue of material fact in support of its assertion that the structures cannot be built. In the face of video evidence that each structure can be built, PlastWood now contends that Rose Art's expert modified the structures while building them and that they are not identical to those depicted on the Magnetix toy box. The court has reviewed the videos provided by both parties and compared those to the structures depicted on the Magnetix packaging and finds that there are no discernable differences. More importantly, the court finds that no reasonable jury could conclude that the structures on the Magnetix box cannot be built as represented on the box.

The minor differences alluded to by PlastWood's expert between the pictures on the Magnetix box and the structures built by Mr. Gagnon do not change the court's conclusions. Under the Lanham Act a defendant is not liable for a false statement unless it was material and likely to influence the consumer's purchasing decision. *See Northern Cal. Collection Serv.,* 911 F.2d at 244; *see also Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 934-35 (D.D.C. 1955) *overruled on other grounds by Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (C.A.D.C. 2008). Thus, the court must decide whether the criticisms identified by PlastWood's expert are sufficiently material to withstand summary judgment.

Mr. Gagnon, Rose Art's expert builder of construction toys, avers that on June 16, 2008, he successfully built the sphere, the airplane, and the building using parts found only in the Magnetix toy sets. He also filmed himself building these structures. Upon reviewing the video, Plastwood's own expert, Dale R. Clark, noticed that the Gagnon video had several skips in it where it appeared that the video was stopped and started

ORDER GRANTING MOTION– 8

again. After the gaps, Mr. Clark opined that new levels of one of the structures were present that were not there before the gap. In response to Mr. Clark's criticism, Mr. Gagnon produced a second video that is attached to Rose Art's reply memorandum depicting him building two of the three shapes that Mr. Clark criticized using only Magnetix products and with no identifiable gaps in time. (Reply Gagnon Decl. (Dkt. # 59), Ex. A.) The court requested that Mr. Clark respond to the second video. On November 18, 2008, Mr. Clark filed a second declaration noting various criticisms of Mr. Gagnon's construction techniques. PlastWood relies on Mr. Clark's expert opinion as the basis for its claim that Rose Art's advertisement is literally false.

### 1. Constructing the Building

According to PlastWood, Mr. Clark's criticism of the building built by Mr. Gagnon is that it has an "internal structure" that is not visible in the image on Magnetix's packaging. (Resp. at 4; Second Declaration of Dale R. Clark ("Clark Sec. Decl.") (Dkt. # 66) ¶ 3).) The building depicted on the Magnetix's packaging is hollow according to Mr. Clark's second declaration. Yet, in Mr. Clark's original expert report he opined that it was not clear from the picture on the Magnetix packaging whether the structure was hollow or had a solid internal structure. (Clark Decl. (Dkt. # 49), Ex. 1 ("GT Engineering Expert Report") at 8 (opining that the "image [of the building] on the package *suggests* a hollow model with no internal structure. However, it was also considered possible that the intended construction was a solid structure made of one-by-one-by-one squares.").) Overall, Mr. Clark was able to construct a model that was close to the one on the package but it required that he construct the building on its side and then prop it up. (*Id.* at 9.)

Because PlastWood's own expert could not definitively state that the building as depicted on the Magnetix box is a hollow structure and given that both Mr. Clark and Mr. Gagnon were able to construct the building using a solid foundation, the court finds that

ORDER GRANTING MOTION– 9

the advertisement on the Magnetix packaging depicting a building is not literally false. PlastWood fails to meet its burden of showing there is some genuine issue of material fact such that a jury should determine whether the building as depicted can be built.

### 2. Constructing the Airplane

Mr. Clark opines that the airplane as built by Mr. Gagnon was assembled mostly in conformance with the image, with the exception that the wings are angled in the picture. (GT Engineering Expert Report at 8.) The wings of the airplane constructed by Mr. Gagnon, according to Mr. Clark, were rigid and could only "remain in place on a flat surface." (*Id.*) In his second declaration, Mr. Clark explains that Mr. Gagnon's second video "shows the successful construction of the airplane model," but notes that Mr. Gagnon made no "attempt to move or manipulate the airplane model to angle the wings." (Sec. Decl. at ¶ 4.) At oral argument, however, PlastWood conceded that the pictures of the airplane on the Magnetix packaging do not suggest that the structures can be moved or manipulated. Given Mr. Clark's opinion that the airplane was successfully built by Mr. Gagnon and PlastWood's concession that the packaging does not suggest that the structures can be manipulated, the court finds that PlastWood fails to create a genuine issue of material fact as to whether the airplane can be built using Magnetix construction sets.

### 3. Constructing the Sphere / Ferris Wheel

Mr. Gagnon was able to build the sphere and Plastwood had no objections to the manner in which he built the sphere. Instead, PlastWood added a new structure that it had not previously identified as not able to be built: the Ferris Wheel. (GT Engineering Expert Report at 8.) Aside from the fact that the Ferris Wheel was never identified in PlastWood's discovery responses and that Mr. Gagnon was not given the opportunity to respond to Mr. Clark's criticism regarding the ability to build the Ferris Wheel, Mr. Clark

ORDER GRANTING MOTION– 10

actually opined that the Ferris Wheel can be built just not in an upright position as depicted on the Magnetix box.  (Clark Decl. at ¶ 5.)  He concedes that the wheel structure can be built lying on its side.  (*Id.*)  At oral argument, PlastWood further conceded that it offered no evidence suggesting that the wheel could not be built lying down and then stood upright.  The court has reviewed the picture of the Ferris Wheel on the Magnetix packaging and cannot itself discern whether the wheel is depicted in an upright position or lying down.  The court can discern, however, that PlastWood failed to properly identify this structure in its discovery responses and, more importantly, failed to create a genuine issue of material fact as to whether the wheel can be stood upright after it is constructed or whether this ability is even material to PlastWood's false advertising claim.

Having reviewed the videos submitted by Rose Art's expert, in light of the criticisms offered by PlastWood's expert, and finding no material difference between Mr. Gagnon's structures and what is depicted on the box, the court grants Rose Art's motion.

## IV.  CONCLUSION

For the above reasons, the court GRANTS Defendant Rose Art's motion for summary judgment (Dkt. # 38).  The court dismisses PlastWood's complaint against Rose Art with prejudice.

DATED this 5th day of December 2008.

JAMES L. ROBART
United States District Judge

ORDER GRANTING MOTION– 11